DISTRICT OF OREGON, ss: AFFIDAVIT OF KATHRYN HOLKA-SEARS

**Affidavit in Support of a Criminal Complaint and Arrest Warrant**

I, Kathryn Holka-Sears, being duly sworn, do hereby depose and state as follows:

**Introduction and Agent Background**

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives and have been since October 2024. My current assignment is in the Eugene Field Office. My training and experience includes graduating from the Special Agent Basic Training Program at the ATF National Academy and the Criminal Investigator Training Program at the Federal Law Enforcement Training Center. I have conducted and assisted multiple investigations into the unlawful possession and use of firearms, theft of firearms from Federal Firearm Licensed Dealers, the possession and distribution of controlled substances, and trafficking cases associated with firearm and narcotic offenses. During my employment as an ATF Special Agent, I have received specialized training regarding, and have personally participated in, various types of investigative activities, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing and interviewing of informants and other individuals who have knowledge concerning violations of federal firearms laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) and drug trafficking cases.

2. I submit this affidavit in support of a criminal complaint and arrest warrant for Richard Joyner ("Joyner") for Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C § 922(g)(1); Possession with the Intent to Distribute 50 grams or more of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); Distribution of

Fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and Possession of Explosives by a Prohibited Person, in violation of 18 U.S.C § 842(i) (the "Target Offenses"). As set forth below, there is probable cause to believe, and I do believe, that Joyner committed the Target Offenses.

3. This complaint is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, interviews of witnesses, a review of records related to this investigation, communications with others who have knowledge of the events and circumstances described herein, and information gained through my training and experience.

**Applicable Law**

4. Title 18 U.S.C § 922(g)(1) provides that it shall be unlawful for any person who, knowing that they have been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to receive, possess, or transport any firearm or ammunition in or affecting interstate or foreign commerce.

5. Title 21 U.S.C. § 841(a)(1) provides that it is unlawful for any person to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance, including methamphetamine and fentanyl.

6. Title 18 U.S.C § 842(i)(1) provides that is it unlawful for any person, knowing they have been convicted in any court of a crime punishable by imprisonment for a term exceeding one year, to receive or possess any explosive which has been shipped or transported in

or affecting interstate commerce.

**Statement of Probable Cause**

**A. Joyner's Criminal History**

7. Joyner has approximately five felony convictions from 2004 to 2010, including a conviction for Attempted Assault in the 2nd degree on July 8, 2010, Curry County Circuit, Oregon, in case number 10CR0287, for which he received 18 months of incarceration.

**B. December 5, 2025, State Search Warrant at Joyner's Residence**

8. On December 5, 2025, law enforcement executed a state authorized search warrant at the address of 42681 Arizona St., Port Orford, Oregon, a property at which multiple people reside. The property included Joyner's trailer and workshop. The search warrant was based on probable cause to believe that offenses involving distribution, manufacture, and possession of controlled substances were occurring on the property.

9. At the location, law enforcement seized from Joyner's workshop four baggies containing suspected methamphetamine from inside a toolbox next to a gun safe. Inside the gun safe were eight firearms, approximately 1,000 rounds of ammunition in various calibers. Items consistent with drug distribution, including drug scales and scoops with residue, were also seized from the workshop. The suspected narcotics were sent to the Drug Enforcement Administration Western Laboratory for analysis testing. The tests resulted in a total of 299.13 grams testing positive for methamphetamine.

10. The firearms found inside the gun safe were identified as a Stoeger, Model Coach gun, 12-gauge shotgun; a Ruger, Model 10/22 carbine, .22 caliber rifle; a Ruger, Model 10/22 carbine, .22 caliber rifle with an obliterated serial number; a Chonqging Jianshe Industry Group,

Importer JTS Manufacturing, 12-gauge shotgun; a Remington, Model 1100, 12-gauge shotgun; a Black Rain Ordnance, Model SPEC15, multi caliber rifle, previously reported stolen; a Benelli, Model nova, 12-gauge shotgun; and a Remington Mossy Oak, model silver, 12-gauge shotgun. Based on a conversation with an ATF agent trained in making interstate-nexus determinations for firearm and ammunition, the agent determined that the firearms and ammunition seized in this search were manufactured outside the state of Oregon, thus affecting interstate and/or foreign commerce.

11. Additionally, law enforcement found items during the search warrant confirming Joyner's connection to the workshop. Those items included a storage unit lease signed on April 30, 2025, by Joyner found near the gun safe and a drawing on the wall with "Rich Joyner" written on it, as displayed in the photo below.




**<u>January 14, 2026, Purchase of Fentanyl from Joyner</u>**

12. During this investigation, law enforcement used a confidential informant (CI) to conduct a controlled buy of drugs from Joyner. The CI knows Joyner personally and had previously purchased drugs from him. The CI is working with law enforcement for

consideration on state charges. The CI has a criminal history, including, but not limited to, convictions for felony controlled substances offenses; attempting to elude a police officer; negotiating a bad check; and theft.

13. The CI attempted to contact Joyner, at the direction of law enforcement, through phone numbers and social media contacts known to the CI, but Joyner did not respond. The CI, however, knew where Joyner was residing and selling drugs. Law enforcement directed the CI to go directly to Joyner's location to conduct a controlled purchase of drugs from Joyner.

14. On January 14, 2026, at approximately 6:30 p.m., ATF Agents searched the CVI and his/her vehicle for contraband, finding none. At that time ATF Agents provided the CI $600 in pre-recorded ATF Agent Cashier Funds (ACF) to purchase a half ounce of fentanyl from Joyner. ATF Agents provided the CI with an audio/video recorder and transmitting/recording device. At approximately 6:43 p.m., ATF Agents initiated the recording devices.

15. The CI was then followed to Joyner's location, which was at the Motel 6 in Coos Bay. Surveillance units previously identified Joyner's pick-up truck in the parking lot of the Motel 6. Surveillance units watched the CI go up to Joyner's room and then go inside. At this point, agents could hear the conversation over the wire.

16. During the transaction, the CI asked Joyner if "it was good" referring to the quality of the suspected fentanyl. Joyner replied, "I don't know I had one person saying it was completely bunk." Based on a comparison of Joyner's voice on jail calls obtained by law enforcement, the voice with the CI in the recording is similar. Surveillance units then observed the CI leave the motel room and enter their vehicle and leave the area. Upon leaving the motel parking lot the CI was followed by surveillance units.

17. Following the transaction, the CI informed the agents that Joyner provided the suspected fentanyl in exchange for $600. The agents sent the suspected fentanyl and packaging to be tested at the Drug Enforcement Administration Western Laboratory. The lab test results showed a net weight of approximately 5.991 grams of fentanyl.

**January 15, 2026, Search of Joyner's Storage Units and Ammunition Found**

18. During the December 5, 2025, search of Joyner's workshop, law enforcement located a lease agreement for storage units located in Gold Beach, Oregon. The lease agreement was with Coastal Apartment and Storage for units 45, 62, 78, 81, and 95. This lease agreement was dated April 30, 2025, and signed by Joyner.

19. On December 9, 2025, law enforcement called and spoke with the manager of the Storage units. The manager stated that he knew Joyner and confirmed he still rented units 78, 81, and 95 located at their property in Gold Beach, Oregon.

20. On January 15, 2026, law enforcement executed a federal search warrant for the three storage units. Law enforcement located 43 rounds of ammunition in various calibers and a drug ledger inside unit 95. Inside unit 81, law enforcement seized approximately 21 rounds of ammunition in various calibers. In unit 78, law enforcement found 3 rounds of .22LR caliber ammunition and a payment receipt for multiple storage units with Joyner's name on it dated June 24, 2025, for $425. An agent trained in making interstate nexus determined that the ammunition seized in this search was manufactured outside the state of Oregon, thus affecting interstate and/or foreign commerce.

21. Law enforcement also identified a suspected explosive device in one storage unit. The device was described as a cylindrical object wrapped in grey colored duct tape and a

pyrotechnic style fuse protruding from one end. Oregon State Police (OSP) Explosive Technician Ziegler responded to the scene and x-rayed the device. The x-ray and visual assessment by OSP suggested that the item appeared to be the metallic case of a remote-controlled car style motor with the axle shaft and inner parts removed. One end of the cylinder appeared to have air gun style pellets or pyrotechnic "stars" placed inside. Based on the hazardous nature of the device OSP transported the device and rendered it safe by countercharging the item. Below is a picture of the suspected explosive device and the x-ray.





**<u>April 15, 2026, State Search Warrant in Coos Bay Oregon</u>**

22. On April 15, 2026, law enforcement executed a state search warrant at 93760 Adams Lane, Coos Bay, Oregon, at which multiple people resided, including Joyner. Prior to the search warrant, a confidential informant (CI) informed law enforcement that they saw Joyner at the residence and knew him to be living at the location. Separately, law enforcement stopped a vehicle leaving the residence and identified Joyner as the driver. Joyner was contacted in that same vehicle on a separate occasion less than a month prior to the search. Two days before executing the warrant, law enforcement observed that same vehicle parked at the residence,

under the carport. The search warrant was executed based on probable cause for the crimes of delivery, manufacture, and possession of controlled substances. The residence is located .2 miles from The Lighthouse Middle school.

23. During the search, it was determined that Joyner resided inside a converted carport connected to the right side of the house. Law enforcement located the following items inside Joyner's bedroom: two explosive seal bombs, a bundle of time fuse, approximately 4.5 grams of suspected fentanyl, and .5 grams of suspected methamphetamine. The suspected controlled substances were sent to the Oregon Department of State Police Forensic Laboratory for analysis. The test results showed 3.67 grams of fentanyl and .57 grams of methamphetamine.

24. According to an ATF Special Agent Bomb Tech, a seal bomb is a commercially manufactured Explosive Pest Control Device (EPCD) that requires a federal explosive license or permit to possess. It contains explosive flash powder. Time fuse, also known as safety fuse, requires a federal explosive license or permit to possess. It contains black powder. The time fuse appeared to be commercially manufactured. Joyner does not possess a federal explosive license. According to an Intelligence Research Specialist with the National Center for Explosives Training and Research, the seal bombs located in Joyner's residence during this search were manufactured outside the state of Oregon, thus affecting interstate and/or foreign commerce.

25. During the search of Joyner's room at the residence, several documents were found to confirm his connection to the workshop searched on December 5, 2025. One document was a FedEx envelope addressed to Joyner, along with ATF Notice of Seizure of Property paperwork listing the firearms that were seized from Joyner's workshop during execution of the

December 5, 2025, search warrant. On the backside of the FedEx envelope, Joyner had listed drug weights, dollar amounts, and included words connected to sales, like the phrase "my profits", consistent with a drug ledger. *See* photos below.







26. The search of the Coos Bay residence also identified items that were seen in the December 25, 2025, Port Orford, Oregon, search. The photo below on the right was taken on December 5, 2025, during the search warrant at 42681 Arizona St., Port Orford inside the workshop belonging to Joyner. The photo on the left was taken on April 15, 2026, at the new residence located in Coos Bay. Both images display a wood carving of a motorcycle engine. Based off the information in these photos, Joyner moved some of his possessions from the workshop in Port Orford to his new residence in Coos Bay.

/ / /

/ / /

/ / /




Coos Bay Residence

Port Orford Residence

27. Prior to being submitted to the Court, this affidavit, the accompanying complaint and the arrest warrant were all reviewed by Assistant United States Attorney (AUSA) Brannon Schwab, and AUSA Schwab advised me that in his opinion the affidavit and complaint are legally and factually sufficient to establish probable cause to support the issuance of the requested criminal complaint and arrest warrant.

## Conclusion

28. Based on the foregoing, I have probable cause to believe, and I do believe, that Richard Joyner committed the crimes of Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C § 922(g)(1); Possession with the Intent to Distribute 50 grams or more of Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii); Distribution of Fentanyl, a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C); and Possession of Explosives by a Prohibited Person, in violation of 18 U.S.C § 842(i)(1). I therefore request that the Court issue a criminal complaint and arrest warrant for Richard Joyner.

## Request for Sealing

29. I further request that the Court issue an order sealing, until further order of the

Court, all papers submitted in support of the requested complaint and affidavit, including the complaint, this affidavit, and the requested arrest warrant. I believe that sealing these documents is necessary because the information to be seized is relevant to an ongoing investigation, and any disclosure of the information at this time may cause destruction of or tampering with evidence, or otherwise seriously jeopardize this investigation.

*By phone pursuant to Fed. R. Crim. P. 4.1*
Kathryn Holka-Sears
Special Agent ATF

Sworn in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone at 2:46 p.m. a.m./p.m. on October 23 2026.

Amy E Potter
HON. AMY E. POTTER
United States Magistrate Judge